# MOSES FISKE *versus* FRAMINGHAM MANUFAC-
## TURING COMPANY.

The defendants, being owners, of a manufactory and of a pond above it, and having purchased of the plaintiff the right of drawing off the water from the pond, through his land, made a written contract with one B, by which B was to run the defendant's mill for one year, and to manufacture for them, at a specified price, cotton furnished by them, and to keep the mill in good running order at his own expense, except the main gearing, which was to be repaired by the defendants if necessary; and no rent was to be charged by the defendants, and they were not to be called upon for any expense unless the main gearing should fail or some injury should arise to the dam; and six or seven acres of land where the factory stood, with the factory houses, blacksmith shop, &c., were to be used by B. In an action against the defendants for an injury sustained by the plaintiff in consequence of B's letting off the water from the pond so rapidly as to overflow the plaintiff's land, it was *held*, that B was the lessee and not the servant of the defendants, and consequently that they were not responsible for the injury complained of.

THIS was an action on the case. At the trial, before *Wilde* J., it appeared that the plaintiff was the owner and occupant of a tract of meadow land in Natick, situated below Wansemog pond and above the defendant's manufactory in Framingham. The defendants were the owners of the pond, and had purchased of the plaintiff the right of drawing off the water from the pond, through his land, to be used by the defendants and their assigns as they might see fit; and the plaintiff's deed authorizes them, at all times, to enter on any of his lands for the purpose of doing all acts that may be necessary to the full and free enjoyment of the right granted, and particularly to dig out mud or other soil for that purpose, and to leave the same on his land.

The plaintiff, to support his action, proved that Horatio Bird, who had the management and control of the defendant's manufactory, caused the water to be let off from the pond so rapidly as to overflow several acres of the plaintiff's meadow, and thus to injure his hay and grass. A small ditch had been dug by the defendants through the plaintiff's land, and several witnesses testified that a larger ditch might easily be made, which would, in their opinion, be sufficient to convey all the water which could be let off through the defendants' gate, without injuring the plaintiff's land or grass.

On the part of the defendants, Bird testified, that he ran the

mill and had control of the pond and water for that purpose, under a written contract with the defendants, dated July 16, 1829, by which he was to run the mill for one year, upon the following conditions : — " The said Bird is to be furnished with good upland cotton, deliverable in Boston, which he is to take and manufacture into shirtings, &c., for which said company agree to pay said Bird $3\frac{1}{4}$ cents per yard at the end of every month ; the cotton is to be used prudently and with care, and the mill to be kept in good running order by and at the expense of said Bird, except the main gearing, which is to be repaired by said company if necessary ; the waste to be accounted for by said Bird, or delivered to the company. It is understood, that no rent for the premises is to be charged by said company, and that they are not to be called upon for any expense whatever, unless the main gearing should fail or some injury arise to the dam. The taxes assessed upon the establishment are to be paid by said company. The premises where the factory stands, say about six or seven acres, with the factory houses, blacksmith shop, &c., are all to be used by said Bird, but not the meadows belonging to the factory. The goods are to be delivered in Boston by said Bird." The witness further testified, that he had been previously employed by the defendants under a similar contract, not reduced to writing, and that the defendants had then instructed him to draw off the water from the pond at such times and in such manner as would be most advantageous to the factory ; and that he had read the plaintiff's deed before mentioned, but had received no particular instructions after the date of the written contract. He likewise testified, that at the time of the act complained of, (which was within the year mentioned in the written contract,) it was necessary to let off the water as rapidly as he had done ; which unavoidably overflowed the ditch. Several witnesses stated as their opinion, that the advantageous running of the mill required that the water should be conveyed as rapidly as it was in the present instance, and that a ditch could not be dug which would transmit the water in sufficient quantities, without overflowing the plaintiff's land.

Among other grounds of defence it was contended, that Bird was the lessee of the defendants, and not their agent, and so

was alone responsible for the act complained of. But the judge instructed the jury, that if any wrong was proved, the defendants were liable to the plaintiff for the acts of Bird, who was their agent or partner under the contract.

The jury found a verdict for the plaintiff; but if in the opinion of the whole Court the defendants were not liable for the acts of Bird, in consequence of the contract, the plaintiff was to be nonsuited.

*Hoar* and *Osgood*, for the defendants, insisted that the contract with Bird was a lease ; and cited Shep. Touch 267 ; Bac. Abr. *Leases &c. K ; Doe* v. *Ashburner*, 5 T. R. 163.

*Oct. 15th.*

*T. Fuller* for the plaintiff.

*Per Curiam.* In Bac. Abr. *Leases &c. K*, it is laid down as a rule, " that whatever words are sufficient to explain the intent of the parties, that the one shall divest himself of the possession, and the other come into it for such a determinate time, such words, whether they run in the form of a license, covenant, or agreement, are of themselves sufficient, and will in construction of law amount to a lease for years." The question before us then is, whether the contract between the defendants and Bird vested in him the possession of the manufactory and of the parcel of land on which it stands. Some of the provisions have a double aspect, and consistently with them he might be either the agent or the lessee of the defendants ; but there are others which admit of only one construction. He was to keep the factory in repair, except that the defendants were to repair the main gearing, if it should be necessary ; he was to have the possession, for the purpose of doing what he had stipulated to perform ; he had the control of the factory, and could employ what servants he would, and regulate their wages ; he might determine how much water should be turned upon the mill ; he was entitled to the use of the land about the factory, and to the buildings thereon ; and whether these buildings were let to laborers employed by him, or to others, rent would probably be paid to him, either in a diminution of wages or otherwise. These provisions are appropriate in the case of a lease. The words, " that no rent is to be charged by the company," also tend to prove that a letting was contemplated. It was argued that a reservation of

*Oct. 19th.*

<div style="margin-left">Fisko<br>
v.<br>
Framing-<br>
nam M^a.<br>
Co.</div>

rent was essential to a lease, but this point is immaterial, for taking the whole agreement together, it was manifes that the defendants received rent in the price at which their goods were manufactured. We are therefore of opinion, that Bird was not the servant of the defendants, but their lessee, having the control and possession of the premises mentioned in their agreement, and consequently that the defendants are not liable to the plaintiff in this action.

*Verdict set aside and plaintiff nonsuit.*